IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HUNTER ANGLIN,                          )
                                        )
        Plaintiff,                      )       NO. 3:20-cv-00294
                                        )
v.                                      )       JUDGE RICHARDSON
                                        )
THE CITY OF DICKSON, TENNESSEE,         )
et al.,                                 )
                                        )
        Defendants.                     )

## MEMORANDUM OPINION

Pending before the Court are Defendant Shaun[1] Rogers's motion for summary judgment (Doc. No. 34), Defendant Eric Chandler's motion for summary judgment (Doc. No. 36), and Defendants Eddie Breeden, City of Dickson, Jeff Lewis, and Seth Lyle's motion for summary judgment (Doc. No. 41). Defendants filed respective memoranda in support of these motions. (Doc. Nos. 35, 37, 42). Plaintiff filed respective responses (Doc. Nos. 61, 62) and Defendants filed respective replies. (Doc. Nos. 69, 71, 72).

For the reasons discussed herein, the Court will grant Defendants' Motions.

## BACKGROUND

A.  Factual Background[2]

Plaintiff Hunter Anglin is a deputy in the Dickson County (Tennessee) Sheriff's Department. Defendant Dickson is a municipality in Dickson County. Defendants Shaun Rogers

---

[1] The original Complaint erroneously refers to Defendant Shaun Rogers as "Zach Rogers." (Doc. No. 33 at 2 n. 1).

[2] The following facts are undisputed for the purposes of summary judgment.

and Eric Chandler ("Sgt. Chandler") are officers of the Dickson Police Department. Defendant Eddie Breeden is a captain of the Dickson Police Department. Defendant Seth Lyles is the Assistant Chief of the Dickson Police Department. Defendant Jeff Lewis is the Chief of the Dickson Police Department.

Plaintiff was arrested by Defendant Chandler for public intoxication at around 3:00 a.m. on April 7, 2019, at a Cookout restaurant near Dickson, TN. Plaintiff had been drinking that night before he went to Cookout. While Plaintiff was waiting in his personal automobile at the Cookout drive-through line, a man named Dixon was two cars in front of Plaintiff in line and was placing his order. Dixon took about ten minutes to order. The car between Dixon and Anglin was playing music loudly. Dixon got out of his car to communicate more clearly with the Cookout employee. Plaintiff got out of his car and walked up to Dixon. Plaintiff and Dixon spoke briefly. Dixon got back into his car. Dixon called the police. Dixon and Plaintiff then had a second verbal encounter.

Defendant Shaun Rogers was the first officer to arrive, and he took information from Dixon and Plaintiff. Officer Reprogal, another officer of the Dickson Police Department (and a non-party in this case), was the second officer to arrive and spoke with Dixon. Defendant Sgt. Chandler arrived, and Plaintiff told Sgt. Chandler that he had been drinking and that he did nothing wrong. Reprogal, paraphrasing what she claimed Dixon had told her, told Sgt. Chandler that Anglin had said to Dixon, "You know I'm way bigger than you. Right?"[3] and that this scared Dixon. Dixon told Sgt. Chandler the same thing. Cookout employees told Sgt. Chandler that Dixon was taking ten minutes to order and that honking ensued. Employees said they saw Dixon and Plaintiff approach each other. After taking these statements, Sgt. Chandler arrested Anglin, citing public intoxication and assault.

---

[3] Plaintiff does not dispute that Reprogal told this to Sgt. Chandler, but he does dispute that Dixon had told Reprogal this. (Doc. No. 64 at ¶ 142).

Magistrate Shane Chandler, who happens to be Defendant Sgt. Chandler's first cousin, was the only magistrate on call that night. He was contacted by Dickson County Dispatch with a request to respond to the arrest by going to the Dickson police station. He was informed by dispatch that Sgt. Chandler arrested Hunter Anglin. Magistrate Chandler contacted District Attorney Ray Crouch regarding any possible conflicts of interest, and DA Crouch apparently "approved" Magistrate Chandler to review the case.[4] Magistrate Chandler went to the Dickson Police Department. Sgt. Chandler presented his case to Magistrate Chandler for public intoxication. Magistrate Chandler reviewed the witness statements of the Cookout employees. Sgt. Chandler was the only government employee that supplied information for the Magistrate's decision to approve the warrant, meaning that Sgt. Chandler wrote the Affidavit of Complaint by himself. At the police station, Dixon presented his case for an assault charge to Magistrate Chandler, who did not approve charges for assault after talking to Dixon.

Defendant Breeden investigated the alleged assault. He filled out a grand jury application, but the assault ultimately was not presented to the grand jury or prosecuted.

As a result of the public intoxication charge, Plaintiff was held at the Dickson County jail for 8 hours. The publication intoxication charge was dismissed prior to any additional prosecution.

B. Procedural Posture

Plaintiff brings three claims under 42 U.S.C. § 1983 against all Defendants, in their personal and official capacities. (Doc. No. 33). The claims are: (1) false arrest/imprisonment, (2) malicious prosecution, and (3) conspiracy to deprive plaintiff of rights to be free from unlawful search and seizure.

---

[4] It strikes the Court as strange that a district attorney might presume to approve what a magistrate does or does not do in connection with the magistrate's duties, but the apparent oddness of this procedure does not affect the Court's analysis herein. By the same token, the Court does not consider the district attorney's "approval" in this case to be a fact of any significance.

Defendants filed their respective motions for summary judgment and memoranda in support, arguing that: (1) the false arrest/imprisonment claim fails because (according to Defendants) there was probable cause to arrest Anglin, (2) the malicious prosecution claim fails because (again according to Defendants) there was probable cause for the prosecution, the individual Defendants were not involved in the prosecution of Anglin, and the City had no policy of malicious prosecution and (3) conspiracy fails because (again according to Defendants) there is no actionable underlying claim.[5] (Doc. Nos. 35, 37, 42). Thereafter, the responses and replies were filed.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the

---

[5] Defendants make several other arguments. The Court omits arguments that need not be addressed.

evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.[6]

---

[6] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 536-37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

<u>DISCUSSION</u>

Defendants seek summary judgment on all three claims against all Defendants. The Court addresses the claims in turn.

A. <u>False arrest/imprisonment</u>

Plaintiff alleges that Rogers and Sgt. Chandler arrested Plaintiff without probable cause, violating his Fourth Amendment right to be free from unlawful seizures. He alleges that Defendants Lewis and Lyles ratified this arrest and instituted a policy of falsely arresting Anglin. Plaintiff also alleges that the City of Dickson is liable because it has a policy that resulted in this false arrest.

As an initial matter, when "a false imprisonment claim arises out of an alleged false arrest," the claims are treated as "identical." *See Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020). In this case, the false imprisonment claim arises out of the false arrest and Plaintiff treats these claims as one. (Doc. No. 33 at 12). The Court accordingly treats Plaintiff's false arrest/imprisonment claim as a single claim.

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. Probable cause is a defense to [a claim of] false arrest." *Webb v. U.S.*, 789 F.3d 647, 666 (6th Cir. 2015) (internal quotations omitted). "[P]robable cause is not a high bar." *Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*.

Whether such probability existed is assessed based on the objective facts known to the officers at the time in question. As the Sixth Circuit noted (in a case that happened to address probable cause to search rather than probable cause to arrest), "[i]n determining whether probable cause exists . . . . we look to the objective facts known to the officers at the time of the search." *Smith v. Thornburg*, 136 F.3d 1070, 1074-75 (6th Cir. 1998) (internal quotation marks and citations omitted). And "[p]robable cause is determined by the *collective* knowledge of the police working together at the time of the search." *United States v. Pointer*, No. 22-1082, 2022 WL 17820539, at

*9 n.8 (6th Cir. Dec. 20, 2022) (emphasis added). *See also United States v. Duval*, 742 F.3d 246, 253 (6th Cir. 2014) ("[T]he collective knowledge of agents working as a team is to be considered together in determining probable cause." (quoting *United States v. Woods*, 544 F.2d 242, 259-60 (6th Cir. 1976))). So the Court forgoes asking whether the officer who actually physically made the arrest personally had probable cause based on facts personally known to him or her; the Court likewise eschews the task of parsing out which responding officers had personal knowledge of what information (and what details the actual arresting officer happened to get from the other officers who generally provided messaging to the arresting officer suggesting that there was probable cause to arrest). Instead, the Court asks whether the responding officers as a whole had probable cause based on their collective knowledge. In a case that happened to involve the reasonable-suspicion standard rather than the probable cause standard, the Sixth Circuit explained why the applicable standard is applied in light of the responding officer's collective knowledge:

> It is well-established that an officer may conduct a stop based on information obtained by fellow officers. *United States v. Barnes,* 910 F.2d 1342, 1344 (6th Cir.1990) (citing *United States v. Hensley,* 469 U.S. 221, 229, 105 S. Ct. 675, 83 L.Ed.2d 604 (1985)). Variously called the "collective knowledge" or "fellow officer" rule, this doctrine recognizes the practical reality that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *Hensley,* 469 U.S. at 231, 105 S. Ct. 675 (quotation omitted). Because officers "must often act swiftly [and] cannot be expected to cross-examine their fellow officers about the foundation of transmitted information," we impute collective knowledge among multiple law enforcement [officers], even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion for the stop. *Id.* at 230–31, 105 S. Ct. 675; *see also Whiteley v. Warden,* 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L.Ed.2d 306 (1971). Whether conveyed by police bulletin or dispatch, direct communication or indirect communication, the collective knowledge doctrine may apply whenever a responding officer executes a stop at the request of an officer who possesses the facts necessary to establish reasonable suspicion.[4] *Dorsey,* 517 F.3d at 396; *Smoak,* 460 F.3d at 779. By imputing the investigating officer's suspicions onto the responding officer, without requiring the responding officer to independently weigh the reasonable suspicion analysis, the collective knowledge doctrine "preserves the propriety of the stop"

and avoids crippling restrictions on our law enforcement. *United States v. Ibarra–Sanchez*, 199 F.3d 753, 760 (5th Cir.1999).

*U.S. v. Lyons*, 687 F.3d 754, 765-66 (6th Cir. 2012).[7]

There need be probable cause only for one (any) arrestable crime, regardless of what ultimate charges are or are not brought. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004). Additionally, probable cause is an objective inquiry. Even if an officer had other reasons (such as a personal grudge or animus, as Plaintiff alleges here) for arresting someone, as long as a reasonable officer could conclude there was probable cause, that is sufficient to support a "reasonable" search or seizure. An officer's "[s]ubjective intentions [as to, for example, motive or the identity of the particular arrest for which the arrest is being made] play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996). Here, Sgt. Chandler, the sole Defendant who arrested Plaintiff,[8] had probable cause to arrest Anglin.

---

[7] Plaintiff argues that officers cannot rely on statements of other officers for determining probable cause because T.C.A. § 40-7-103 allows officers to arrest only when the alleged misdemeanor is committed or threatened in the arresting officer's presence. But Tennessee's presence requirement is a matter of state law, and not a feature of the Fourth Amendment; thus it is irrelevant to the assessment of probable cause in the analysis of a Fourth Amendment false-arrest claim. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) ("Pyles' rights under Kentucky law, including her right as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer, are not grounded in the federal Constitution and will not support a § 1983 claim."). As for what *is* relevant—precedential appellate case law setting forth the "collective knowledge rule"—it makes clear that where multiple officers respond, the determination of probable cause is based on the facts known to all responding officers, not only to the one who ultimately happens to be the arresting officer.

[8] Contrary to what Plaintiff claims, Defendant Rogers did not arrest him. As Sgt. Chandler's body camera video shows, Sgt. Chandler alone effectuated the arrest. (Sgt. Chandler video at 22:00). Even if Rogers had arrested Sgt. Chandler, Rogers had probable cause given that Dixon also told Rogers that Plaintiff put him (Dixon) in fear. (Rogers video at 00:15). And in any event, as suggested above, the question is not whether a particular one of multiple responding officers had personal knowledge sufficient to support probable cause; the question instead is whether there was probable cause to arrest based on the collective knowledge of all responding officers.

Specifically, the facts collectively known to the officers provided probable cause to believe that Plaintiff committed assault, an arrestable crime. Tennessee provides that:

(a) A person commits assault who

. . .

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury

Tenn. Code Ann. § 39-13-101. Dixon told Sgt. Chandler that Plaintiff asked him (rhetorically, it appears) "do you know how big I am?" (Doc. No. 64 at ¶ 73). Dixon separately told officers Rogers and Reprogal as well. Nothing Dixon said was contradicted by what the Cookout employees said. Reprogal relayed to Sgt. Chandler what Dixon told her, and relayed that Dixon seemed afraid. (Sgt. Chandler video at 1:30). Dixon also stated to Sgt. Chandler that he was put in fear by Plaintiff. Thus, Sgt. Chandler had probable cause to believe that Plaintiff, by walking up and asking, "do you know how big I am?" intentionally caused reasonable fear of imminent bodily injury in Dixon. To be clear, the Court is not saying that this comment was exceedingly menacing or that it provided a reasonable basis for fear that imminent bodily injury was certain. But what the Court is saying that when an individual is confronted by an obvious upset individual who makes that kind of comment, there is a reasonable fear of imminent bodily injury of some kind (even if not the worst kind), even though the grounds for fear concededly is hardly overwhelming. Therefore, there is no genuine dispute that there was probable cause to believe that simple assault had been committed in violation of Tenn. Code Ann. § 39-13-101(a)(2).[9]

Plaintiff argues that Dixon telling Sgt. Chandler that he was afraid should not be considered because Sgt. Chandler "coached" Dixon into stating this. Sgt. Chandler asked a leading question,

_____

[9] Of course, that is not to say that a jury would or should find Defendant guilty of such crime beyond a reasonable doubt based on these facts.

"you were put in fear, right?" But Dixon's statement to Chandler that he was in fear was credible because, as Officer Reprogal relayed to Sgt. Chandler, Dixon also stated this to her. Furthermore, Dixon relayed additional circumstances that tended to show that he was afraid, such as his retreating back into his car after the conversation.

Based on the facts no in dispute, no reasonable jury could find a lack of probable cause supporting Plaintiff's initial arrest. Therefore, the false arrest/imprisonment claim fails against all Defendants.

B. Malicious prosecution

Plaintiff argues that he suffered a deprivation of Fourth Amendment rights because (according to him) he was maliciously prosecuted for public intoxication. He argues that Sgt. Chandler was aware that a neutral and detached magistrate could not find probable cause based on what he (Sgt. Chandler) presented to Magistrate Chandler, his Affidavit of Complaint and the written witness statements of two Cookout employees. Yet, according to Plaintiff, Sgt. Chandler knew that the magistrate on duty was his cousin, who "did nothing more than rubber-stamp Sgt. Chandler's public intoxication charge" even though the materials with which he was presented (Magistrate Chandler) did not support probable cause. (Doc. No. 61 at 32). Thus, "Sgt. Chandler's actions to proceed with the prosecution and present his case to the magistrate caused Anglin's subsequent detention at the Dickson County Jail." *Id.* at 33.

To prevail on a claim of malicious prosecution, Plaintiff must show:

(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in plaintiff's favor.

*Webb v. U.S.*, 789 F.3d 647, 659 (6th Cir. 2015).

There are two notable principles that effectively serve to limit the scope of the first element, *i.e.* make it harder to show that the first element is satisfied with respect to a particular officer. First, "[t]o be liable for 'participating' in the decision to prosecute the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Gardner v. Evans*, 920 F.3d 1038, 1065 (6th Cir. 2019). Second, as discussed below, to be liable for participating in the decision to prosecute, the officer must have acted with a culpable mental state exceeding mere negligence.

The Court first must determine whether the materials presented to Magistrate Chandler supported probable cause for a prosecution of public intoxication.

> A person commits the offense of public intoxication who appears in a public place under the influence of . . . any other intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to other persons or property; or (3) The offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-17-310. Sgt. Chandler's Affidavit of Complaint reads:

> On April 7, 2019 at approximately 02:46 City cars were dispatched to Cookout in reference to a subject in the drive thru making threats. Dispatch advised the male suspect was wearing a preds jersey. When Ptl. Rogers arrived on scene he observed the male subject in the preds jersey approaching the victim/complainant at the drive thru window area. Ptl. Rogers then made contact with the suspect who was identified as Hunter Anglin. He asked Mr. Anglin what was going on and he advised Ptl. Rogers that he needed to talk with the employees inside. When I arrived on scene I went and spoke with Mr. Anglin and asked him what was going on. While I was listening to his side of the story I could smell a strong odor of alcohol coming from his person. I asked him if he had anything to drink and he told me that he had been drinking. After talking with Mr. Anglin I spoke with two Cookout workers Kenneth Healy and Jacob Capps they both said that they heard and saw the two gentleman saying something to each other. After talking with all parties involved I placed Mr. Anglin under arrest for public intoxication due to his level of his intoxication and him being involved in a disturbance.

(Doc. No. 39-3 at 3). A reasonable jury could find that this Affidavit of Complaint does not support probable cause to prosecute for public intoxication under Tennessee statute. Although the Affidavit notes that Plaintiff stated he had been drinking and that Chandler could smell a "strong odor of

alcohol" coming from Plaintiff,[10] that is not sufficient to establish probable cause with respect to Plaintiff being so affected by alcohol that it caused him to endanger or unreasonably annoy others in the vicinity. The Court cannot say that a strong odor of alcohol never emanates from a person that has had only one drink and does not have altered behavior. Absent more indication that Plaintiff's behavior was affected by his alcohol consumption (such as it was), a reasonable jury could find that there was no probable cause to prosecute for public intoxication.

Moreover, the witness statements of Cookout employees Kenneth Healy and Jacob Capps (Doc. No. 39-2 at 3-4) do not make an additional contribution sufficient to establish probable cause of public intoxication. Neither of them made any relevant observations about whether Plaintiff was under the influence of alcohol. Thus, a reasonable jury could find for Plaintiff regarding element

---

[10] At several points, Plaintiff states that Sgt. Chandler did not in fact smell a strong odor of alcohol from Plaintiff's person, arguing that "Sgt. Chandler spoke with Hunter Anglin for approximately 29 seconds and appears to be at least five (5) feet away from Anglin in the videos." (Doc. No. 61 at 23); (Doc. No. 64 at 30). Though Plaintiff does not raise this argument, officers may be liable for malicious prosecution based on material falsehoods they make in affidavits.

> Providing reports, affidavits, or other investigative materials containing falsehoods, omissions, or misstatements to a prosecutor can constitute participation when (1) those materials formed the basis for the charge, or otherwise ultimately influenced [a plaintiff's] continued detention, and (2) the falsehoods, omissions, or misstatements were made deliberately or with reckless disregard for the truth. In short, an officer may be held liable for making materially false statements either knowingly or in reckless disregard for the truth to establish probable cause. Negligence, however, is insufficient.

*Meeks v. City of Detroit, Michigan*, 727 F. App'x 171, 178–79 (6th Cir. 2018) (citations and quotations omitted). First, 29 seconds is sufficient time to smell an odor from someone, and the Court cannot say that an odor cannot be detected from five feet away. Second, even if Sgt. Chandler did not smell a strong odor of alcohol at the time of his first conversation with Plaintiff, nothing suggests that such a false statement was made in knowing or reckless disregard for the truth to establish probable cause. For example, Sgt. Chandler may have smelled the odor when he physically detained Plaintiff as there was no distance between them then. Sgt. Chandler may have misstated the facts as to when he smelled the odor, but this would not indicate a knowing or reckless (as opposed to merely negligent) material falsehood. Furthermore, as Plaintiff notes, Sgt. Chandler believed that Plaintiff's admission that he was drinking was sufficient to establish that Plaintiff was intoxicated. (Doc. No. 64 at 30) (citing Doc. No. 39-7 at 52). Thus, Sgt. Chandler did not have much incentive to add a false description of an odor. The facts do not establish that Sgt. Chandler made a reckless or knowing falsehood that would satisfy a claim of malicious prosecution.

(2) of malicious prosecution because it could find that Magistrate Chandler did not have probable cause to sign off on a charge of public intoxication.

A reasonable jury could also find for Plaintiff regarding elements (3) and (4) of malicious prosecution. As a result of the prosecution of public intoxication, Plaintiff was held for several hours in jail and forced to post bond and make a later court appearance. Additionally, because his public intoxication charge was dropped, the criminal proceeding was ultimately resolved in his favor.

Thus, the Court will examine element (1) with respect to each Defendant in turn by asking whether a reasonable jury could find that Defendant "made, influenced, or participated" in the decision to prosecute Plaintiff.

### 1. *Sergeant Chandler*

The Sixth Circuit has observed that with respect to a malicious prosecution claim, "an officer may be held liable for making materially false statements [in an affidavit] either knowingly or in reckless disregard for the truth to establish probable cause. Negligence, however, is insufficient." *Meeks v. City of Detroit, Michigan*, 727 F. App'x 171, 178–79 (6th Cir. 2018) (citations and quotations omitted). Though that observation (that negligence is insufficient) was made in the context of an officer's alleged liability for malicious prosecution based on *making false statements in an affidavit*, it seems naturally to apply likewise to an officer's alleged liability for malicious prosecution based on participating in the alleged malicious prosecution via the act of *submitting an affidavit* (irrespective of whether it contained false statements). *Cf. Wright v. City of Euclid, Ohio*, 962 F.3d 852, 876 (6th Cir. 2020) (holding that an officer's conduct must have some element of "blameworthiness or culpability in the participation" to be held liable for malicious prosecution). Here, therefore, Plaintiff's claim against Sgt. Chandler requires Sgt. Chandler to have been more than negligent in submitting (*i.e.*, deciding to submit) his affidavit to

Magistrate Chandler in furtherance of the allegedly malicious prosecution. Only then would Sgt. Chandler be considered a "participant" in the prosecution for purposes of element (1).

As explained above, Plaintiff's theory with respect to Sgt. Chandler's participation in malicious prosecution is that "Sgt. Chandler was aware that he lacked probable cause to arrest Plaintiff, he was also aware that he lacked probable cause to prosecute him for it," Sgt. Chandler knew that Magistrate Chandler was the magistrate on duty, and Sgt. Chandler intended for Magistrate Chandler to approve a prosecution unsupported by probable cause. (Doc. No. 61 at 32). But, as explained in the discussion regarding the false arrest/imprisonment claim, the record reveals that Sgt. Chandler *did* have probable cause to arrest Plaintiff. And the evidence establishes that Sgt. Chandler genuinely believed he had probable cause to arrest and initiate a prosecution, rather than believed he could and would succeed in initiating the prosecution without probable cause due to his cousin happening to be the reviewing magistrate. In his body camera video, Sgt. Chandler expresses concern that Plaintiff was "showing out" and could cause trouble. (Sgt. Chandler video at 13:20-16:40). And although a reasonable jury could find that Sgt. Chandler did not have (objective) probable cause to believe Plaintiff committed the offense of public intoxication, there is no genuine dispute that he had at least *some* basis to think that Plaintiff had done so that would support Sgt. Chandler's genuine concern over unlawful behavior rather than an intent to maliciously prosecute Plaintiff. Plaintiff told Sgt. Chandler he had been drinking. Dixon and Reprogal reported that Plaintiff walked up, constituting an "unreasonable annoyance" at a publicly accessible drive-through. While a reasonable jury could find that Plaintiff was not "under the influence . . . to the degree that" Plaintiff unreasonably annoyed Dixon—meaning Sgt. Chandler could not necessarily conclude there was a causal relationship between Plaintiff's drinking and his behavior towards Dixon—the fact that Plaintiff had been drinking did contribute

something to the likelihood that Plaintiff committed public intoxication. Sgt. Chandler also testified that he determined Plaintiff to be intoxicated because Plaintiff told him he had been drinking. (Doc. No. 39-7 at 52).

Instead of intentionally pushing for the prosecution of an unjustified public intoxication charge, Sgt. Chandler, at the suggestion of his superior, was prepared to drop the public intoxication charge if the assault charge was approved. (Sgt. Chandler video at 16:00-17:00). And although Sgt. Chandler knew that his cousin was the magistrate on duty, that does not mean Sgt. Chandler was reckless with respect to the possibility of prosecution without probable cause. Sgt. Chandler and Magistrate Chandler declared that Magistrate Chandler has approved Sgt. Chandler's warrant requests before without issue. (Doc. No. 39-4 at 2); (Doc. No. 39-5 at 1). Magistrate Chandler also took measures, although conceivably subject to second-guessing as to adequacy, to eliminate conflicts of interests. And because Magistrate Chandler was the only magistrate on duty, it's unclear what else Sgt. Chandler should have done instead after arresting Plaintiff.

Thus, because no reasonable jury could find that Sgt. Chandler was more than negligent in presenting his case to Magistrate Chandler, Sgt. Chandler is entitled to summary judgment on Plaintiff's claim of malicious prosecution.

## 2. *Officer Shaun Rogers*

The complaint alleges broadly that "Defendants . . . made, influenced, or participated in the decision to prosecute." (Doc. No. 33 at 11). Defendants argue that Rogers did not participate in the malicious prosecution, because (according to Defendants) he did not influence the decision to prosecute; Defendants assert that Rogers did not place Plaintiff under arrest, did not bring the charges before Magistrate Chandler, and never spoke with the assigned district attorney regarding

the case. (Doc. No. 35 at 6). Plaintiff makes no argument as to how Rogers participated in the malicious prosecution. (Doc. No. 61 at 32-33). [11]

"[T]ruthful participation in the prosecution decision is not actionable." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). Defendant has shifted the burden to Plaintiff to show a genuine dispute regarding Rogers's lack of participation in the prosecution. There is no genuine dispute that Rogers did anything other than provide information to Sgt. Chandler. Though Rogers is mentioned in the Affidavit of Complaint, it is undisputed that Rogers did not assist with writing the Affidavit of Complaint. (Doc. No. 64 at 52). Defendant has shifted the burden to Plaintiff to show that there is a genuine dispute regarding Rogers's involvement.

### 3. *Captain Breeden*

Defendant argues that Breeden did not participate in Plaintiff's prosecution because Breeden was "not present at the time Anglin was served with process in the early morning hours of Sunday, April 7, 2019," and all Breeden did was provide videos to the prosecutor's office. (Doc. No. 42 at 23-24). Breeden was only informed of the arrest the day after it occurred and investigated the assault. (Doc. No. 42 at 10). Plaintiff makes no argument as to how Breeden participated in the

---

[11] The Court cannot overstate how unhelpful it is for a party to do what Defendants did here—state **225** allegedly material alleged facts. The Court must ask what, in Defendants' view, the Court is supposed to do with these 225 facts and how it could possibly do so with any efficiency. For example, is the Court supposed to go fact by fact and determine whether each one is actually undisputed? And what about materiality—namely, to the extent that the Court disagrees with the assertion that one or more of these facts is undisputed, what does Defendant believe the effect of that is on its motion for summary judgment? For example, does it mean that Defendant cannot prevail on its motion? And if Defendants do not believe that to be the case, then in what sense are these facts actually "material," if not material in the sense that they must be resolved in favor of Defendants for Defendants to prevail? The Court does not mean to pick on Defendants, since they are far from alone in doing as Defendants have done. The Court, instead, wishes to take this opportunity to urge all counsel moving for summary judgment in this Court to think about what facts are truly material, why counsel believes they are material, and what exactly the Court is supposed to do with the allegedly undisputed facts and counsel's assertion that the allegedly undisputed facts are "material." There is a way for counsel to go about doing all of these things, and the Court urges all counsel to be intentional about such things.

malicious prosecution (other than through conspiracy, which is discussed in part C). (Doc. No. 62).

Defendant has successfully shifted to Plaintiff the burden to show a genuine dispute of material fact. Plaintiff has not carried that burden. Therefore, Breeden is entitled to summary judgment regarding malicious prosecution.

### 4. *Chief Lewis and Assistant Chief Lyles*

Plaintiff argues that Defendants Lewis and Lyles are liable under a theory of supervisory liability. (Doc. No. 62 at 15-16). Lewis and Lyles are in Sgt. Chandler's chain of command, and Plaintiff alleges that because "Lewis publicly supported Rogers and Chandler" and "Chief Lyles also publicly and overwhelmingly supported Chandler and Rogers" (Doc. No. 62 at 16), Lewis and Lyles approved of Sgt. Chandler's actions and ratified Sgt. Chandler's alleged malicious prosecution.

"Supervisory liability comprises two concepts important here: active involvement by the supervisor and causation." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021). "Active involvement isn't the only thing a plaintiff needs to show. There also must be a causal connection between the defendant's active unconstitutional behavior and the plaintiff's injuries." *Id.* at 761-762 (citations and quotations omitted).

First, because a reasonable jury could not find Sgt. Chandler liable for malicious prosecution, Lewis and Lyles may not be held liable for malicious prosecution solely based on a supervisory liability theory.

Second, Lewis and Lyles's alleged approval of Sgt. Chandler's acts did not cause Plaintiff's injuries. Lewis and Lyles's alleged approval of Sgt. Chandler's acts happened only after the prosecution had commenced. Once commenced, the prosecution was not controlled by the police department. It is within the district attorney's authority to continue or terminate the prosecution.

*McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005). Therefore, even if Lewis and Lyles did approve of Sgt. Chandler's participation in a malicious prosecution, that approval did not cause Plaintiff any injury, such as his confinement.

Thus, Defendants are entitled to summary judgment regarding malicious prosecution against Lewis and Lyles.

### 5. *The City of Dickson*

Plaintiff brings his claim of malicious prosecution also against the City of Dickson ("City"). A claim of municipal liability requires a showing that the alleged misconduct is the result of a policy, statement, regulation, decision or custom promulgated by the city, county, or its agent. *Monell Dep't of Soc. Svcs.,* 436 U.S. 658, 690-691 (1978). Municipalities are not subject to liability for the deprivation of civil rights under the doctrine of respondeat superior. *See id*. at 691. Thus, for the City to be liable to Plaintiff under Section 1983, there must be a direct causal link between an official policy or custom and the alleged violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 394 (6th Cir. 2014) (quoting *Slusher v. Carson*, 540 F.3d 449, 456-57 (6th Cir. 2008)).

To support a § 1983 claim against the City, Plaintiff must demonstrate at least one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Wiley v. City of Columbus, Ohio*, 36 F.4th 661, 670 (6th Cir. 2022) (citations and quotations omitted).

Proceeding under theory (2) described above, Plaintiff argues that "[a] municipal policy or custom exists under a ratification theory[,] and the City of Dickson is liable." (Doc. No. 62 at 17). Plaintiff argues that the City had a policy because Lewis is a final decisionmaker and ratified Sgt. Chandler's actions by publicly supporting him. *Id.*

Under a ratification theory of liability, a municipality may be liable when a policymaker for the city approves an unconstitutional act of a subordinate. *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) ("[A] plaintiff would not need to establish a pattern of past misconduct where the actor was a policymaker with final policymaking authority."). Where, as here, a plaintiff seeks to make a claim based on "a single-act theory, a plaintiff must demonstrate that a deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question. Moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.* (citations and quotations omitted).

Even assuming arguendo that Lewis is "a final policymaker" for purposes of this basis of municipal liability, Lewis cannot be said to have ratified any unconstitutional acts committed by Sgt. Chandler. As explained in part (B)(1) above, Sgt. Chandler is not liable for malicious prosecution, because the evidence of record shows that he acted negligently at worst. Therefore, even if Lewis did publicly support Sgt. Chandler's actions, this does not constitute an unconstitutional policy because Sgt. Chandler's did not "participate" in a malicious prosecution.

Furthermore, Lewis's alleged acts of approval operate as a single act rather than as "a custom of similar incidents such that ratification of those incidents establishes acquiescence." *Wiley*, 36 F.4th at 670. Thus, Lewis's single act of approval must be the "moving force" behind Plaintiff's harm. *Burgess*, 735 F. 3d 462 at 479. As explained in part (B)(4) above, Lewis's alleged

acts of approval that occurred after the prosecution was handed over to the district attorney could not be considered by a reasonable jury to be the "moving force" behind Plaintiff's injuries.

Thus, no reasonable jury could find the City of Dickson liable under a ratification theory.

C. <u>Conspiracy</u>

Plaintiff brings, against all Defendants, a claim of conspiracy to deprive him of his constitutional rights. Plaintiff alleges that all Defendants "unlawfully conspired and deprived Plaintiff of his constitutionally protected right to be free from unlawful search and seizure[.]" (Doc. No. 33 at 14). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). "To prevail on a civil conspiracy claim [under Section 1983], [the plaintiff] must show that (1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [plaintiff]." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (citations and quotations omitted); *accord Rieves*, 67 F.4th at 862; *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767–68 (6th Cir. 2020). Furthermore, "[a] claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, 557 Fed. Appx. 444, 450 (6th Cir. 2014).

Plaintiff argues at length that the Defendants targeted him for arrest by monitoring his activity, thereby engaging in a conspiracy to deprive him of constitutional rights. (Doc. No. 62 at 9-15). Regardless of whether these allegations are true, Plaintiff has not established that a reasonable jury could find a separate and actionable constitutional injury. Thus, summary judgment is appropriate as to the claim of civil conspiracy.

<u>CONCLUSION</u>

The Court's role is not to determine whether Plaintiff "should" have been subjected to the arrest and the (ultimately curtailed) prosecution to which he was subjected. It may be that, in retrospect and all in all, the arrest and prosecution would have been best avoided. But that is not for the Court to say. Instead, the Court's role here is to say whether Plaintiffs' Section 1983 claims based on that arrest and prosecution can survive the instant motions for summary judgment For the reasons discussed herein, the Court answers that question in the negative. Thus, the Court will grant Defendants' motions for summary judgment (Doc. Nos. 34, 36, 41) in their entirety. An appropriate accompanying order will be entered.

ELI  RICHARDSON
UNITED STATES DISTRICT JUDGE